EDNA B. HARRIS v. WILLIAM S. WALDEN AND WIFE, MARY SUE WALDEN

No. 641PA84

(Filed 13 August 1985)

**1. Appeal and Error § 6.8; Rules of Civil Procedure § 56.7— denial of summary judgment—no review after trial on merits**

The denial of a motion for summary judgment is not reviewable during appeal from a final judgment rendered in a trial on the merits.

**2. Adverse Possession § 25.2— continuous possession of property—insufficient evidence**

The trial court's finding that "defendants and their predecessor in possession, each individually, actually possessed the tract in dispute continuously and without interruption in a hostile and exclusive fashion openly and notoriously" was unsupported by the evidence where the only evidence of adverse possession by defendants was testimony by the male defendant that he walked the boundaries he claims in 1973 and that his son built a rifle range in the area, but such acts are more in the nature of trespasses than acts of dominion indicating ownership, and where the evidence showed no act of possession by defendants' predecessor other than one instance of timber cutting in 1965.

**3. Adverse Possession § 6— tacking possession—insufficient evidence**

The trial court's findings that defendants and their predecessors were in privity as to "possession and use" of the disputed land and that "use of the

Harris v. Walden

defendants' predecessor lapped with that of the defendant and extended for a period of greater than seven years" were unsupported by the evidence where defendants purchased their land in 1973 and the evidence showed only that defendants' predecessors cut timber from the disputed area in 1965 but there was no evidence of possession of such area by defendants' predecessors between 1966 and 1973.

ON petition by defendants for discretionary review of a unanimous decision of the Court of Appeals, 70 N.C. App. 616, 320 S.E. 2d 435 (1984), reversing the judgment in favor of defendants entered by *Saunders, J.*, on 9 May 1983 in Superior Court, BURKE County. Heard in the Supreme Court 16 May 1985.

*Simpson, Aycock, Beyer & Simpson, by Samuel E. Aycock and Michael Doran, for plaintiff appellee.*

*McMurray & McMurray, by John H. McMurray, for defendant appellants.*

MARTIN, Justice.

The first question presented by this appeal is whether the Court of Appeals erred in entering parital summary judgment for plaintiff. Plaintiff's motion for summary judgment was denied by Judge Grist, and the case proceeded to trial where judgment was entered for the defendants. We find that the Court of Appeals erroneously entered partial summary judgment for the plaintiff, and we therefore reverse the decision of the Court of Appeals.

Secondly, after reviewing the findings of fact to which plaintiff excepted, we find the trial judge's conclusion that defendants acquired title to the disputed land by adverse possession for seven years under color of title is not supported by the evidence and findings of fact. Because several of the findings made by the trial judge were in error, we find that plaintiff is entitled to a new trial.

The plaintiff, Edna Harris, and the defendants, William S. Walden and wife, Mary Sue Walden, own contiguous tracts of land in Burke County. The deeds held by both plaintiff and defendants contain a description of an overlap area of approximately fourteen acres. On 27 January 1981, Mrs. Harris brought the present action against the Waldens, seeking to quiet title to the overlap area and to recover damages for trespass. The Waldens

filed an answer and counterclaim alleging superior legal title to the overlappage and, alternatively, claiming ownership by adverse possession. Plaintiff's motion for partial summary judgment was denied by Judge Grist. Judge Saunders, sitting without a jury, found that although plaintiff possessed superior record title, the defendants were entitled to ownership of the lappage due to adverse possession for seven years under color of title. The Court of Appeals held that plaintiff, by establishing a marketable title pursuant to N.C.G.S. 47B-2(a), had presented prima facie evidence of ownership which the defendants had the burden to rebut by coming forward with evidence of adverse possession. The court further held that defendants' failure to support their claim of adverse possession by the factual showing required under Rule 56 of the North Carolina Rules of Civil Procedure entitled the plaintiff to summary judgment. The Court of Appeals reversed the decision of the trial judge and remanded the case to the superior court for entry of partial summary judgment as to ownership and for trial on the issue of damages.

The purpose of summary judgment is to bring litigation to an early decision on the merits without the delay and expense of a trial when no material facts are at issue. *McNair v. Boyette*, 282 N.C. 230, 192 S.E. 2d 457 (1972). After there has been a trial, this purpose cannot be served. Improper denial of a motion for summary judgment is not reversible error when the case has proceeded to trial and has been determined on the merits by the trier of the facts, either judge or jury.

[1] The denial of a motion for summary judgment is an interlocutory order and is not appealable. An aggrieved party may, however, petition for review by way of certiorari. *Carr v. Carbon Corp.*, 49 N.C. App. 631, 272 S.E. 2d 374 (1980), *disc. rev. denied*, 302 N.C. 217 (1981). To grant a review of the denial of the summary judgment motion after a final judgment on the merits, however, would mean that a party who prevailed at trial after a complete presentation of evidence by both sides with cross-examination could be deprived of a favorable verdict. This would allow a verdict reached after the presentation of all the evidence to be overcome by a limited forecast of the evidence. In order to avoid such an anomalous result, we hold that the denial of a motion for summary judgment is not reviewable during appeal from a final judgment rendered in a trial on the merits. Support for

our holding is found in *MAS Corp. v. Thompson*, 62 N.C. App. 31, 302 S.E. 2d 271 (1983); *Oil Co. v. Smith*, 34 N.C. App. 324, 237 S.E. 2d 882 (1977); *Boyles Galvanizing & Plating Co. v. Hartford Acc. & Ind. Co.*, 372 F. 2d 310 (10th Cir. 1967); *Home Indemnity Co. v. Reynolds & Co.*, 38 Ill. App. 2d 358, 187 N.E. 2d 274 (1962); Annot., 15 A.L.R. 3d 899, 922 (1967).

We find that the Court of Appeals improperly reviewed the denial of the summary judgment by the trial court and therefore improperly entered partial summary judgment for the plaintiff. Accordingly, we reverse the decision of the Court of Appeals.

The second issue we must address is whether the judgment in favor of defendants entered by the trial judge was supported by sufficient evidence presented at trial. Among the findings of fact made by Judge Saunders are the following:

15. The property descriptions in Plaintiff's Exhibit 1 and Defendants' Exhibit 1 conflict, creating a lappage according to surveyor, Chiswell, of some 14.94 acres.

16. The tract in dispute, topographically, is rolling, hilly land with slopes from 10 to 30 degrees.

17. It is suitable for timbering, hunting, or gathering firewood. It is not arable.

18. In 1965 the defendants' predecessor in title and grantor, who resided on the property of which the defendants claim the disputed tract is a part, employed a timber cutter, Doyle Gragg.

19. Witness Gragg testified that he cut timber up to the line he understood to be the property line for the defendants' grantor, said line being bounded by Point 4 to Point 1 to Point 2 and 3.

20. Gragg cut this timber for three months in 1965 and saw the plaintiff's husband on several occasions as he cut, conversed with him, cut to the described line, and was not ordered off that land.

. . . .

22. Plaintiff offered Plaintiff's Exhibit 26 which was a recorded boundary line agreement, filed in Burke County, to

which the plaintiff was a signatory in 1961, settling a boundary line agreement with adjacent neighbors, not the present parties-defendant or their grantors, which noted in the duly recorded boundary line deed agreement that the "commonly understood" line separating the plaintiffs and defendant grantor's property was from Point 4 to Point 1.

. . . .

27. Defendant Walden, who resides on the property adjacent to the disputed tract which he claims, testified that he had walked the property line of the disputed tract; that his son had set up a rifle range in the area and shot into the disputed tract; that he has cut firewood on the tract, hunted it, and posted it; and that he has asked people who were not invited to leave it.

28. In 1979 the defendant cut the timber on the property to the line extending from Point 4 to Point 1.

29. He did this despite a letter from an attorney hired by the plaintiff to protest this action.

30. In 1979 he blazed the line, and in this year refused to permit a surveyor employed by the plaintiff to survey the tract.

31. The plaintiff waited until January 1981, to file the lawsuit.

32. The defendants' deed, Defendants' Exhibit 1, is a muniment of title, constituting color of title.

33. The property claimed by the defendants under color of title, plus seven years, is included within a tract claimed by the plaintiff who has marketable title.

34. The defendants have the junior claim in this lappage, the plaintiff has the senior claim.

35. The defendants and their grantor are in privity, both as to identity of property description and possession and use to the defendants' tract bounded and inclusive of Point 5 to Point 4 to Point 1 to Point 2 to Point 3.

36. The defendants and their predecessor in possession made such use of the disputed tract to which it was susceptible.

37. The defendants and their predecessor in possession, each individually, actually possessed the tract in dispute continuously and without interruption in a hostile and exclusive fashion openly and notoriously.

38. The use of the defendants' predecessor lapped with that of the defendant and extended for a period of greater than seven years.

Judge Saunders thereupon concluded "that the defendants are entitled to a Judgment based upon a superior claim arising out of color of title and adverse possession for a period of greater than seven years, having proved that entitlement by the greater weight of the evidence."

Plaintiff excepts to findings of fact 17, 18, 19, 22, 35-38, and the court's conclusion of law. Therefore we are bound by all other findings of fact and need determine only if those findings to which exception was taken are supported by competent evidence of record and, if so, whether the court's findings support its conclusion of law. *Pollock v. Reeves Bros., Inc.*, 313 N.C. 287, 328 S.E. 2d 282 (1985).

Finding of fact 17 states that the land is suitable for timbering, hunting, or gathering firewood, but that it is not arable. The evidence offered at trial established that the disputed land was "rolling, hilly land with slopes from 10 to 30 degrees" but failed to show that the land was unfit for cultivation. Therefore, the finding that the land is not arable is unsupported by competent evidence.

Plaintiff excepted to that portion of finding of fact 18 which states that "defendants' predecessor in title," T. M. Kincaid, "resided" on the land in question. The record fails to indicate whether his residence was located on the disputed land. While this portion of finding of fact 18 is unsupported by the evidence at trial, the rest of the finding, which states that Kincaid hired Doyle Gragg to cut timber in 1965, is supported by Gragg's own testimony.

Because plaintiff's exception to finding of fact 19 was not argued in her brief, we find the exception to be waived. N.C.R. App. P. 10(a).

In finding of fact 22 the trial court found that a 1961 boundary line agreement between plaintiff and an adjoining neighbor established a "commonly understood" boundary line between plaintiff's land and that of the defendants. After careful review of the agreement, we conclude that this finding is unsupported by the evidence presented at trial. The dashed line shown on the survey map which is a part of the agreement, and which line defendants claim to be the "commonly understood" boundary line, appears to have been made in order to establish the location of a concrete monument by way of reference to a steel pin located approximately seventy feet to the north of the monument. The line defendants would have us recognize as the boundary between their land and that of Mrs. Harris was only for the purpose of establishing the situs of points found in the boundary line agreement. Nothing in the exhibit supports a finding that it was a commonly understood boundary line between the parties.

Findings of fact 35-38 deal with defendants' claim of title by adverse possession. These findings, however, are not specific findings of fact based on evidence but are actually conclusions of law.

In *Locklear v. Savage,* 159 N.C. 236, 237-38, 74 S.E. 347, 348 (1912), Justice Walker succinctly defined adverse possession as follows:

> What is adverse possession within the meaning of the law has been well .settled by our decisions. It consists in actual possession, with an intent to hold solely for the possessor to the exclusion of others, and is denoted by the exercise of acts of dominion over the land, in making the ordinary use and taking the ordinary profits of which it is susceptible in its present state, such acts to be so repeated as to show that they are done in the character of owner, in opposition to right or claim of any other person, and not merely as an occasional trespasser. It must be decided and notorious as the nature of the land will permit, affording unequivocal indication to all persons that he is exercising thereon the dominion of owner.

Harris v. Walden

[2]   Defendants purchased their property in 1973. The plaintiff instituted this lawsuit in January of 1981. The only evidence of adverse possession offered by defendants prior to the year 1975 was Mr. Walden's testimony that he walked the boundaries he claims in 1973 and that his son built a rifle range in the area. There was no evidence presented that the rifle range was located on the disputed property, and in fact plaintiff's surveyor testified that it appeared to be located to the west of the claimed boundary line. Under the facts of this case, these acts are more in the nature of trespasses than acts of dominion indicating ownership. In addition, the evidence showed no act of possession by defendants' predecessors other than one instance of timber cutting in 1965. Therefore, finding 37, which states that "[t]he defendants and their predecessor in possession, each individually, actually possessed the tract in dispute continuously and without interruption in a hostile and exclusive fashion openly and notoriously," is based on an insufficient showing of the evidence.

[3]   T. M. Kincaid and wife were the immediate predecessors in title to the defendants. In 1965 T. M. Kincaid cut timber from the disputed area. The evidence at trial failed to show any act of possession of the disputed property on the part of the Kincaids at any time prior to 1965 or between 1966 and 1973. Because there was no evidence of possession of the disputed property by the Kincaids between 1966 and 1973, it was error for the trial judge to find that the Waldens and T. M. Kincaid were in privity as to "possession and use" of the disputed property. *Vanderbilt v. Chapman*, 172 N.C. 809, 90 S.E. 993 (1916). For the same reason, it was error for the court to find that "[t]he use of the defendants' predecessor lapped with that of the defendant and extended for a period of greater than seven years." Given the absence of any evidence of possession for a period of seven years prior to the conveyance by the Kincaids to defendants, there is no way for the Kincaids' period of use in 1965 to be tacked onto that of the defendants. *Paper Company v. Jacobs*, 258 N.C. 439, 128 S.E. 2d 818 (1963). Findings 35 and 38 are thus unsupported by the evidence as offered at trial.

Because there was no evidence offered at trial tending to show the use to which the disputed tract was susceptible, finding 36 was also made in error. The evidence showed only that the land was rolling, hilly land with slopes from 10 to 30 degrees.

Such a description fails to indicate the use which could be made of the land.

Based on our review of the record and the arguments of counsel, we conclude that the contested findings of fact made by the trial court are not supported by sufficient evidence; therefore, the court's conclusion that defendants are entitled to the disputed land by virtue of adverse possession for seven years under color of title is not supported by the findings of fact. Accordingly, we find that the judgment entered in favor of the defendants was in error and that plaintiff is entitled to a new trial.

As plaintiff is being granted a new trial on the basis of error in the above findings, we find it unnecessary to discuss plaintiff's assignment of error concerning findings of fact not made by the trial judge.

For the foregoing reasons, the decision of the Court of Appeals is reversed and the case is remanded to that court for further remand to the Superior Court, Burke County, for a

New trial.