MAISOON MAHER ASAD (SULEIMAN), Plaintiff,
v.
MAHER M. ASAD, Defendant.
No. COA05-592
North Carolina Court of Appeals
Filed February 7, 2006
This case not for publication
Wilson County No. 98 CVD 2090.
Thomas & Farris, P.A., by Allen G. Thomas, for plaintiff-intervenors.
King & King, L.L.P., by Charlene Boykin King, for plaintiff-appellee.
Narron & Holdford, P.A., by I. Joe Ivey, for defendant-appellant.
LEVINSON, Judge.
This dispute arises out of an order requiring Maher M. Asad (defendant) to pay $25,000 to Coldwell Banker Gregory Properties, Inc. (intervenor) for a commission associated with the sale of real property.
This litigation originated as a domestic relations matter. On November 9, 1998, Maisoon Maher Asad (plaintiff) filed a complaint seeking, inter alia, an equitable distribution of marital property. On February 3, 1999, defendant filed a pleading that answered the complaint and set forth numerous counterclaims. This pleading included a prayer for "trial by jury on all issues so triable before a jury."
Thereafter, a series of orders were necessary to address the ownership and disposition of the Thriftway Food Store and the real property associated with the same (hereafter "the property"). They are summarized below:
(1) A 6 January 2000 consent order included provisions that the property be placed on the market for sale "with a mutually agreed upon broker", and that "the division of the proceeds shall be reserved for hearing or agreement of the parties at a later date."
(2) In a 20 September 2000 order, the trial court found that defendant fraudulently conveyed the marital residence and the property to his mother without the knowledge or consent of plaintiff. The trial court therefore ordered that the transfer of the property be "avoided", and vested title in the same to plaintiff. Also by virtue of this 20 September 2000 order, plaintiff was authorized to sell the property.
(3) A 4 October 2001 consent order provided that "the parties agree to sell . . . the [property,]" and, further, that "[d]efendant shall be in charge and control of marketing theproperty. . . ."
(4) A 4 September 2003 consent order included a provision that the "[d]efendant has now tendered an offer for the purchase of the business in the total amount of $225,000 which has been accepted by the [p]laintiff with regard to her ownership interest in the business." In addition, this consent order provided that "the [d]efendant shall hold the [p]laintiff harmless and shall fully indemnify the [p]laintiff from any and all claims or potential claims by Mark Silverthorne, Realtor and/or Gregory Properties, and/or Diptiben K. Patel arising out of a Listing Agreement entered into by and between the [p]laintiff and Mark Silverthorne, Realtor and/or Gregory Properties." Moreover, the parties agreed that "all remaining issues in this cause of action, including pending issues and any other issues which shall be properly pled and noticed for hearing, shall be scheduled for trial before the Honorable William C. Farris, Judge Presiding, at the October 16 and 17, 2003 session of Civil District Non-Jury Court for Wilson County[,]" and "to submit to the Court the issue [of] whether or not realty commissions should be paid to Mark Silverthorne, realtor, and/or Gregory Properties, Inc., arising out of [the listing agreement]."
(5) A 26 November 2003 order on equitable distribution was entered disposing of the marital estate. This order provided, inter alia, that "[t]he issue of the commissions due to Mark Silverthorne and/or Gregory Properties, which amounts are the sole responsibility of the Defendant, shall be reserved for hearing at a later date."
On 2 December 2004, defendant filed a motion for a jury trial as to any issues concerning real estate commissions. This motion was denied by the trial court. On 9 December 2004, the court entered a consent order allowing Mark Silverthorne and Coldwell Bankers Gregory Properties, Inc. to intervene. On 5 January 2005, defendant filed a motion for summary judgment in his favor on the issue of the commissions. Plaintiff and intervenors filed a joint motion for summary judgment on 14 January 2005, asserting that there were no genuine issues of material fact concerning either the existence and validity of the real estate commission, or the amount of the same. The trial court, in an order dated 26 January 2005, denied both motions for summary judgment.
After a hearing, the trial court, in an order dated 26 January 2005, made the following findings of fact:
2. The Plaintiff and Defendant entered into a Consent Order dated September 4, 2003 that read in part, "The Defendant shall hold the Plaintiff harmless and shall fully indemnify the Plaintiff from any and all claims or potential claims by Mark Silverthorne, Realtor and/or Gregory Properties, and/or Diptiben K. Pate1 arising out of a Listing Agreement entered into by and between the Plaintiff and Mark Silverthorne, Realtor and/or Gregory Properties."
. . . .
6. The parties have requested the Court to hear this matter at this time to determine what monies, if any, Defendant is obligated to pay Plaintiff or to indemnify her under the Consent Order of September 4, 2003 which issue was also reaffirmed in the Consent Order dated November 12, 2003.
. . . .
8. On February 18, 2003, Plaintiff contracted with Coldwell Banker Gregory Properties, Inc. through agent, Mark R. Silverthorne, to list for the purpose of sale the property known as 417 Hines Street, Wilson, North Carolina. Aregular Listing Agreement of Property for Sale was executed on that date and was signed by Maisoon Suleiman and by Mark Silverthorne for Coldwell Banker Gregory Properties, Inc. This was an exclusive listing and the document was entered into evidence by the Plaintiff. The Exclusive Listing which was executed by Plaintiff with Coldwell Banker Gregory Properties, Inc. read as follows, "EXCLUSIVE RIGHT TO SELL. For a period extending until midnight on February 18, 2004, Listing Agency shall have the exclusive right to sell the Property as agent of Seller at the price and on the terms set forth below, or upon such other terms as may be agreed upon in writing by Seller with any Buyer".
9. On July 23, 2003 an Agreement for Purchase and Sale of Real Estate and an Addendum were signed by Plaintiff, Maisoon Suleiman, as Seller, and Diptiben K. Patel, as Buyer, with a sales price for the property in question of $250,000.00. The Buyer was secured by Mark R. Silverthorne and Coldwell Banker Gregory Properties, Inc.
10. The exclusive listing contains a provision for a 10% commission to be paid to Agent.
11. The Defendant advised Plaintiff that he wanted to purchase the property himself and would immediately pay $225,000.00 and would be responsible for any indebtedness incurred by Plaintiff Suleiman as a result of the listing with Coldwell Banker Gregory Properties, Inc. and Mark R. Silverthorne. An Agreement was signed and a Consent Order was entered to this effect. The Defendant shall indemnify Plaintiff for the commissions owed to Coldwell Banker Gregory Properties, Inc., which commission is $25,000.00.
12. . . . The Defendant is obligated to indemnify Plaintiff for the sum of $25,000.00 under his agreement with Plaintiff as well as the Consent Order dated September 4, 2003.
13. An Order dated August 24, 2000, read as follows: "The Defendant Maher M. Asad is divested of title to the real estate at 417 Hines Street, Wilson, North Carolina which is more fully described in Exhibit B which is attached hereto, pursuant to N.C.G.S. Section A-1, Rule 70 and title to that property is hereby vested with the Plaintiff, Maisoor M. Asad." There has been no divesture of the property from the Plaintiff since that date.
14. There was a subsequent Order dated August 23, 2001 that said, "The parties shall sell the real estate on Hines Street known as The Thriftway Food Store. The Defendant shall be in charge of control of marketing this Property (time is of the essence)". The undersigned Judge was the Presiding Judge signing the Order on August 23, 2001 and there was no modification of the August 24, 2000 Order divesting Defendant of title. The intent of the Court was only to allow the Defendant to "lead" in the marketing of the property but, in no way was it to limit the authority of Plaintiff to attempt to sell the property nor to divest her of any rights or privileges allowed in the August 24, 2000 Order. The listing by the Plaintiff with Coldwell Bankers Gregory Properties, Inc. resulted in the purchase of this property.
15. There has been a history in this case of the Defendant being out of the country and being unavailable to attend court proceedings and, in fact, deeds to the marital property were executed by the Defendant to his mother with the intent to prevent the Plaintiff from selling or asserting her marital interest in the property. These conveyances rendered the property unmarketable by Plaintiff and prevented the Plaintiff from implementing numerous subsequent Orders of this Court allowing her to sell the property. Theproperty was eventually transferred back into Defendant's name. At no time was there any intent by this Court to exclude the Plaintiff from listing and selling the property in question.
16. The Plaintiff had title in her name at the time of the listing and a valid contract was signed by Plaintiff with Coldwell Bankers.
17. There was a bona fide offer from Patel dated July 23, 2003 for a total sum of $270,000.00, of which $250,000.00 was the amount allotted for the sale of 417 Hines Street, Wilson, North Carolina, the property owned by Plaintiff and Defendant. The additional $20,000.00 was earmarked for Wilson Petroleum Company which was the owner of the tanks on the premises. This was a bona fide offer under the contract with agent (Coldwell Banker Gregory Properties, Inc.) for seller (Plaintiff).
18. When the Defendant learned of this pending sale, he agreed to purchase the property for $225,000.00 and recognized the original offer of $250,000.00 by Patel, as well as the 10% commission which amounted to $25,000.00 owed to Coldwell Banker Gregory Properties, Inc.
19. Upon the sale of the property to the Defendant, who had agreed to be responsible for any commissions owed, the Plaintiff became indebted to Coldwell Banker Gregory Properties, Inc. and Mark R. Silverthorne in the sum of $25,000.00. Defendant is responsible for indemnifying Plaintiff for the commission owed Coldwell Banker Gregory Properties, Inc.
20. The Plaintiff, through her agents, had found a bona fide buyer prior to Defendant's offer and there was in existence at the time of the sale to Defendant, an exclusive contract for the sale of the property with Coldwell BankerGregory Properties, Inc. The Defendant has taken the benefit of the marketing efforts of Plaintiff and her agents, Coldwell Banker Gregory Properties, Inc. and has agreed to the Consent Order wherein he would be responsible and would indemnify Plaintiff for any money owed to Coldwell Banker Gregory Properties, Inc.
21. There was a valid listing and the Plaintiff is indebted to Coldwell Banker Gregory Properties, Inc. in the sum of $25,000.00 and hence the Defendant is obligated to assume and pay said debt and the indemnity language in the September 4, 2003 Order verifies this debt.
Based upon these findings, the trial court concluded:
. . . .
3. There was a valid sales contract between Plaintiff and Coldwell Banker Gregory Properties, Inc., which contract resulted in the sale of the property. The Defendant has the obligation under law and [by] agreement to indemnify the Plaintiff in the sum of $25,000.00 and the indemnity language is found in the September 4, 2003 Order.
4. There is a valid debt owed by Plaintiff to Coldwell Banker Gregory Properties, Inc. and, in turn, the Defendant is obligated to indemnify Plaintiff of said debt[,] a result of the indemnity language in the September 4, 2003 Order.
The trial court ordered defendant to pay $25,000 in real estate commissions to the intervenor, and to indemnify plaintiff for the same because she was the party who executed the listing agreement with the intervenor. In addition, the trial courtdecreed that the $25,000 obligation serve as a lien on the property.
Defendant appeals.
Defendant first argues that the trial court erred by denying his December 2, 2004 motion for a jury trial on the issues related to whether he was obligated to pay a commission to Coldwell Banker Gregory Properties, Inc . Relying on his February 3, 1999 answer, in which he demanded a jury trial, and the December 2, 2004 request for a jury trial that he filed in "an overabundance of caution", defendant asserts that "any action undertaken by the Intervenor to recover realty commissions based on allegations of breach of contract by the Plaintiff, whether filed as a separate action in the Superior Court Trial Division of Wilson County or asserted by agreement as an Intervener [sic] in the pending District Court cause of action, constituted an action at law which mandated a trial by jury upon request by the Defendant." On these facts, we disagree.
Defendant's brief decries the failure of the trial court to grant him a jury trial, and explains that actions at law are ordinarily reserved for juries. Defendant's principal argument is that his agreement to allow the trial court judge to resolve the issue of commissions preceded the intervention by Coldwell Bankers, and therefore any waiver to his right to a jury could not apply to relief sought by Coldwell Bankers. However, defendant does not construct a legal argument, supported by relevant citations of authority, explaining why his previous agreement to submit this precise issue to the trial court judge was ineffective as to Coldwell Properties. Defendant also suggests that, because the obligation to pay a real estate commission sounds in contract, the issue must generally be reserved for a jury regardless of the particular forum or lawsuit in which the issue arises. However, defendant does not articulate, with relevant authority, the effect of the undeniable fact that he previously agreed to submit this precise issue to the bench knowing that any such obligation would inure to the benefit of Coldwell Bankers.
We observe that defendant agreed to allow Coldwell Bankers Gregory Properties, Inc. to intervene without requiring the same to file a separate pleading specifically seeking the commission, and specifically agreed to allow a trial court judge to determine all remaining issues related to the ongoing litigation, including the "issue regarding whether or not realty commissions should be paid to Mark Silverthorne, realtor, and/or Gregory Properties, Inc., arising out of [the listing agreement]." Defendant's express agreement, evidenced at a minimum by the 4 September 2003 consent order, to submit the issue to the presiding judge was not contingent on whether the real estate entity was made a party to the ongoing litigation or not. Rather than litigate the issue of real estate commissions in a separate action filed by Coldwell Bankers, the parties agreed to resolve it within the confines of the existing litigation and allow the trial court to resolve the same. This was made a part of a negotiated settlement entered into by the parties with the benefit and assistance of legal counsel.
Defendant has not demonstrated that the trial court erred by denying his motion for a trial by jury on the issue of the real estate commissions. The relevant assignments of error are overruled.
Defendant next contends the trial court erred by denying his motion for summary judgment. The trial court denied both parties' motions for summary judgment and a hearing was held on all issues. The rule is well established in North Carolina that "the denial of a motion for summary judgment is not reviewable during appeal from a final judgment rendered in a trial on the merits."Harris v. Walden, 314 N.C. 284, 286, 333 S.E.2d 254, 256 (1985) (citations omitted). Therefore, this issue is not properly before us.
In defendant's third and final argument, he contends the trial court's findings of fact numbers 11, 12, 14, 16, and 18-21 of the order dated 26 January 2005 are unsupported by the evidence and do not support the court's conclusions of law numbers 3 and 4. We disagree. Rule 9(e) of the North Carolina Rules of Appellate Procedure requires that the record on appeal contain "so much of the evidence, set out in the form provided in Rule 9(c)(1), as is necessary for an understanding of all errors assigned[.]" N.C.R. App. P. 9(e). "Where such evidence is not included in the record, it is presumed that the findings are supported by competent evidence, and the findings are conclusive on appeal." In re Botsford, 75 N.C. App. 72, 75, 330 S.E.2d 23, 25 (1985) (citations omitted).
Defendant has not included either a transcript or narrative summary of the proceedings in the record on appeal. There is nothing before us indicating what evidence was presented to the trial court. Because there is no record of the evidence presented at trial, it is presumed these findings are supported by competent evidence, and we summarily conclude that these findings of fact support the conclusion of law that defendant has an obligation to pay the $25,000 real estate commission to the intervenor.
The relevant assignments of error are overruled.
Affirmed.
Judges HUDSON and TYSON concur.
Report per Rule 30(e).